## Bennett v. Commonwealth.

(Decided May 15, 1928.)

(As Modified, on Denial of Rehearing, December 21, 1928.)

### Appeal from Jefferson Circuit Court (Criminal Branch).

1.    Criminal Law.—Whether confession obtained from one accused of murder was voluntary, so as to permit consideration thereof, or was taken in violation of Anti-Sweating Act (Ky. Stats., secs. 1649b-1–1649b-5), held question for jury, under evidence that confession was obtained as result of seven hours of questioning by police officials, during which accused was handcuffed, held without food, and subjected to insults and physical violence, where such evidence was contradicted by state's witnesses.

2.    Criminal Law.—Where evidence in murder prosecution made competency of defendant's written confession question for jury, question should be submitted under instruction directing jury not to consider the written confession for any purpose, if they should believe from the evidence that it was procured from defendant involuntarily and in violation of Anti-Sweating Act (Ky. Stats., secs. 1649b-1–1649b-5).

3.    Criminal Law.—Commonwealth's evidence to the effect that defendant's written confession as to murder was dictated by him without assistance or suggestion, following conversation not in any way improper, held not to show violation of Anti-Sweating Act (Ky. Stats., secs 1649b-1–1649b-5), so as to render confession incompetent.

4.    Criminal Law.—Anti-Sweating Act (Ky. Stats., secs. 1649b-1–1649b-5), rendering inadmissible confessions obtained by plying defendant with questions or by threats, or extortion of informa-

tion by wrongful means, does not prevent commonwealth from using as evidence confessions voluntarily made.

J. RIVERS WRIGHT for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant was convicted in the Jefferson circuit court of the crime of murder, and, in accordance with the verdict of the jury so providing, was sentenced to pay the extreme penalty, death by electrocution. He appeals.

The chief and serious question presented by the appeal is whether the alleged confession of accused, which, over his objection, was introduced in evidence against him, was competent. He insists that it was procured in a manner prohibited by sections 1649b1 to 1649b5, Kentucky Statutes, commonly referred to as our "anti-sweating" statute. After providing "that what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain information from him concerning his connection with crime or knowledge thereof, after he has been arrested and in custody, as stated, by plying him with questions or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime," the statute further provides that no confession obtained by "sweating" as so defined shall be permitted as evidence in any court of law in this state.

In a case involving a construction of this statute, Sutton v. Commonwealth, 207 Ky. 597, 269 S. W. 754, it was said:

"We do not agree with counsel for the commonwealth, that in order to render incompetent evidence of a confession made by a defendant of his guilt of a crime with which he stands charged, the confession must have been extorted from him by violence. While the word 'extorting' may, by implication, be given a meaning that would include a result attained by violence, we think the word, as employed in the statute, supra, is used in the sense of 'compelling'

or 'coercing' from the person charged with crime the confession or information intended to be used as evidence of his guilt, which may be accomplished by any means that would serve to overcome his power of resistance, or make the confession or admission other than a voluntary one.''

It was held that the evidence in that case was not sufficient to establish that the confession had been procured in the forbidden manner, because, as the opinion reads:

"There is no evidence whatever conducing to prove that there was any persuasion, compulsion or extortion, either by the 'plying' of questions, threats, offer of immunity from prosecution, promises of reward, or other wrongful means, employed by the officers or others to obtain the confessions.''

The construction there given this section of our statutes is in accord with all the other opinions we have written involving the question. Many previous opinions are cited in the Sutton case, and Webb v. Commonwealth, 220 Ky. 334, 295 S. W. 154, is perhaps the latest utterance of the court on the question. See, also, Dickson v. Commonwealth, 210 Ky. 350, 275 S. W. 805; Singleton v. Commonwealth, 210 Ky. 456, 276 S. W. 141; Myers v. Commonwealth, 212 Ky. 245, 278 S. W. 620.

Unquestionably, if the testimony of appellant is to be believed, the confession introduced in evidence against him was procured from him in a manner prohibited by this statute, as construed by this court. According to his evidence, he was taken to detective headquarters of the police force of the city of Louisville at approximately 9 o'clock a. m., handcuffed. The confession was obtained from him about 4 o'clock p. m. In the meantime he had been handcuffed; had been permitted to eat no food at the usual time for the noontime meal. Some five or six detectives and police officers, taking turns, plied him with questions constantly. He was repeatedly cursed and defamed with vile and insulting language. At different times he was subjected to most brutal physical violence at the hands of one or two of the officers, being kicked repeatedly, struck on the face and body with their fists, and struck on the head with a blackjack. After a day of this character of treatment, his power of resistance was

broken, and he confessed in order to relieve himself of further torture. He was corroborated in a measure by a witness, then a fellow prisoner in the Jefferson county jail, who testified that, when he was returned to jail late that afternoon, he bore many marks of physical violence upon his person. Elwood Beal was being detained at the same time charged with complicity in this same homicide. He appears to have been under examination at detective headquaters on the same occasion when appellant was. The commonwealth introduced him as a witness in rebuttal to contradict appellant's testimony as to his brutal mistreatment at the hands of police officials. Appellant had stated that he had seen Staley, one of the detectives, choke this witness that day. He was asked by the commonwealth: "Did Staley choke you, or Mr. Staley, or any other officer choke you?" and answered: "No, sir." On cross-examination he testified:

> "You deny that Staley choked you over here at detective headquarters? He grabbed me by the shoulders, but he did not choke me." "Why did he grab you by the shoulders? He grabbed me by the shoulders and asked me where the money was."

It may be explained that robbery of the deceased, according to the theory of the commonwealth, was the motive for this homicide.

Appellant's testimony is substantially denied by the police officers, although it is admitted that he was questioned on Saturday by several policemen; the details of the questioning not being developed by the evidence. While the defendant was in custody from early Saturday morning until he made his confession on the following Monday, he was left free to move about the office and converse with any one with whom he chose to talk. But, however that may be, the evidence for the defendant was such that the court could not say, as a matter of law, that his confession was a voluntary one, and it was for the jury to determine, under proper instruction, whether the confession dictated by the defendant was of his own volition, or extorted from him in violation of the statute.

Under the rule prevailing at present in this jurisdiction, the preliminary question affecting the competency of the written confession should have been submitted to the jury, under an instruction in effect directing the jury not to consider the written confession for any

purpose, if they should believe from the evidence that it was procured by treatment condemned by the statute, supra, as construed in the opinions cited. The principle under which such preliminary instruction affecting the competency of evidence must be submitted to the jury in a state of case where the evidence for the commonwealth was such as here, that the confession would be competent, and the testimony for the defendant was such, as here, that it would be incompetent, under the statute, will be found expounded in the cases of Gilliland v. Commonwealth, 224 Ky. 453, 6 S.W.(2d) 467, and Billings v. Commonwealth, 223 Ky. 381, 3 S. W. (2d) 771. The instructions given on the former trial, together with an appropriate one submitting the issue respecting the competency of the confession, will constitute the law of the case on another trial.

Appellant seriously insists that the evidence for the commonwealth shows that the confession of defendant was obtained in violation of the statute; but this argument proceeds upon a misapprehension of the commonwealth's evidence. It was shown by the testimony of Col. Easley, Capt. McGillicutty, Mr. Otte, and other commonwealth witnesses, that the confession was dictated by the defendant without assistance or suggestion, and signed by him, and that he expressed a feeling of relief after thus unburdening himself. From the testimony of these officers it appears that no one else had anything to do with questioning the defendant on the day when the confession was made, and that the confession was freely and voluntarily made.

Reference is made to the testimony of Clarence Stucker, a police officer, and it is insisted that his admissions on cross-examination showed plying amounting to a violation of the statute. He had many conversations with the defendant, but they occurred on Saturday preceding the written confession, and it is not shown that these conversations were improper, or in any way coercive on the defendant. Stucker stated that he talked to defendant 10 or 15 times during the day, for possibly 10 minutes at a time, and that some other officers talked to him; but he did not say how long the other officers talked to him, or what was the subject of the conversations. The witness denies that the defendant was grilled in any way, or that any effort was exerted to compel a confession. It is clear, from the commonwealth's evi-

dence, that the confession was competent, unless the jury accepted the testimony of the defendant in contradiction of that testimony. The statute, as construed in our opinions, does not forbid the commonwealth from using as evidence confessions voluntarily made, and the confession in the present case was a voluntary one, and admissible in evidence, if the testimony for the commonwealth is accepted by the jury.

Many other questions are argued on the appeal; but we find no merit in them, and it is not likely that such questions will arise on another trial.

For the reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.